## GLENS FALLS INS. CO. et al. v. BENDY et al.

### No. 2012.

Court of Civil Appeals of Texas. Beaumont. May 28, 1931.

Rehearing Denied June 3, 1931.

Gill, Jones & Tyler, of Houston, for appellants.

B. F. Pye, A. L. Calhoun, D. C. Marcus, and Howth, Adams & Hart, all of Beaumont (A. D. Lipscomb and Elton Cruse, both of Beaumont, of counsel), for appellees.

**WALKER, J.**

In this case in a jury trial in the lower court appellees, C. C. Bendy & Sons, a partnership composed of C. C. Bendy, C. J. Bendy, and W. C. Bendy, recovered judgment against appellants, Glens Falls Insurance Company, New Jersey Insurance Company, and Norwich Union Fire Insurance Company for $10,500 upon three policies of fire insurance, of which amount $3,000 was for the loss and destruction by fire of one hollow tile building and $7,500 was for the loss and destruction of certain machinery and equipment located in said building. Other parties appeared in the case as interveners and were awarded specific recoveries against the judgment in favor of C. C. Bendy & Sons. The insurance companies will be referred to as appellants, C. C. Bendy & Sons as appellees, and the interveners by name.

Appellees instituted separate suits against appellants, but by orders of the court the three suits were consolidated and tried as one. Appellees in their original petition merely pleaded the issuance of the policies, the loss, and the performance of the necessary prerequisites to fix liability for the loss. Appellants answered by general and special demurrers, general denial, and by specially pleading a breach of the following condition of the policies: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if * * * before a fire occurs the insured shall obtain or receive information that foreclosure proceedings have been commenced or that notice has been given or posted of sale of any property covered by this policy by virtue of any mortgage or trust deed."

The following plea was the only answer on the merits made by appellees to the special plea of appellants: "Plaintiffs further show to the Court that after the occurrence of the fire in question and having full knowledge of same and of the suit instituted by Stedman Fruit Company and of what proof of loss plaintiffs would make, R. E. Smith & Co., agent for defendant, assured plaintiffs that said loss would be paid promptly, and requested plaintiffs to pay the balance due on this policy of insurance and the two policies in other companies written by the said R. E. Smith & Co., on the same property, and that plaintiffs relying upon such representations did pay the balance due on said policy, whereby defendant waived any and all alleged grounds of forfeiture plead by it in its pleadings."

Appellants' first contention is that on the undisputed evidence the condition of the policies specially pleaded by them was breached, thereby rendering the policies void, and that the court erred in not instructing a verdict in their favor except as to "the amount of premiums paid on the policies" which they tendered to appellees as part of their answer.

The facts under this proposition are substantially as follows: The three policies sued upon were issued and delivered to appellees on the 17th day of August, 1928, and each of them contained the condition specially pleaded by appellants. August 24, 1928, intervener Stedman Fruit Company instituted suit in district court of Jefferson county against appellees upon a claim in the sum of $2,500 and to foreclose a chattel mortgage lien, given by appellees to secure the $2,500, against certain of the personal property covered by the policies sued upon. In that suit citation was duly issued and served upon each of the appellees, and on the 17th day of September following, appellees filed their answer in that suit. On October 12, 1928, all the property covered by the three policies involved, except a small amount not involved in this suit, was destroyed by fire. On the morning of October 13, 1928, R. E. Smith & Company, local agents of appellants in Beaumont, and who solicited, wrote, and delivered these policies, were notified of the loss of the property by fire and of the institution of the foreclosure suit by intervener Stedman Fruit Company against appellees. The proof indicated that suit was settled by agreement, but the date and terms of the settlement, and whether or not the case was pending on the docket of the court when the fire occurred, were not shown. The amount of the premium for the three policies sued upon was $198.50, of which amount $184.79 remained due and unpaid at the time of the fire. After receiving the information as to the fire and the institution of the foreclosure suit by Stedman Fruit Company, R. E. Smith & Company demanded of appellees the payment of the balance due on the premiums, and, meeting this demand, appellees paid R. E. Smith & Company the full balance due in the sum of $184.79 on the 16th day of October, 1928. On this issue W. C. Bendy testified as follows: "After the fire, we notified the insurance agents the next morning. And they knew about it before that time, because

we notified the general public in town that we wouldn't make deliveries that morning on account of the fire. When I returned off the route the morning after the fire, Mr. Hodgson, of R. E. Smith & Co., and Mr. Cook, who is in the insurance business here as adjuster, were out there. Mr. Hodgson told me as soon as we would pay the balance of the premiums, we would get quick action on securing the loss. They were looking over the fire when I returned home. * * * I borrowed the money with which to pay the balance due on these policies, which Mr. Hodgson requested me to pay. That was the balance due on these three policies of insurance."

There was some testimony by appellants to the effect that credit for the unearned premiums was extended appellees by R. E. Smith & Company and that appellants had "nothing to do with the extension of the credit." But there was no suggestion that appellees knew this fact, nor was there any testimony that appellants had assigned this claim to R. E. Smith & Company. The record sustains the conclusion that appellees paid the balance due on the premiums to R. E. Smith & Company, as agents of appellants, upon the faith of the representations made to them when demand was made for the payment that "as soon as we could pay the balance of the premiums we would get quick action on securing the loss," believing R. E. Smith & Company had authority from appellants to make this promise. Appellees had no notice, actual or constructive, of any limitation upon the authority of R. E. Smith & Company to represent appellants in collecting the balance due on the premiums, or to contract in relation thereto. At the time these policies were written and delivered, and at the time of the fire, and at the time appellees paid the balance due on the premiums, R. E. Smith & Company held written certificates of authority from each of the appellants authorizing them "to receive proposals for insurance against loss and damage by Fire & Tornado in Beaumont and vicinity, to fix rates of premium, to receive moneys, and to countersign, issue, renew and consent to the transfer of policies of insurance signed by the president and attested by the secretary of the New Jersey Insurance Company, subject to the rules and regulations of said company; and to such instructions as may from time to time be given by its officers."

After receiving the balance due on the premiums in the manner stated, appellants made no offer to appellees to refund to them the unearned premiums until they made the tender as part of their original answer, filed herein on the 28th day of February, 1929. Each appellant duly answered in the case filed against it and after the consolidation they made a joint defense. Appellant New Jersey Insurance Company thus pleaded its tender of the premiums received for the policies: "Defendant herein tenders in open court the sum of Seventy-Five ($75.00) Dollars being the premium paid on said policy with legal interest thereon from date of its payment and asks that said policy be held for naught." Appellants made no issue by any special plea that R. E. Smith & Company were not acting as their agents in receiving from appellees the balance due on the premiums.

■ Under the authorities of this state, the fact that appellees, before the fire, received information that the foreclosure proceedings had been instituted by intervener Stedman Fruit Company, constituted a breach of the condition of the policies, pleaded by appellants, sufficient to render the policies void. Home Insurance Co. v. Puckett (Tex. Com. App.) 27 S.W.(2d) 111, 114, and authorities therein cited. Because of this breach, appellants were entitled to the instructed verdict as requested by them, unless the breach was waived by the act of their local agents in demanding and receiving of appellees the balance due on the premiums for which the policies were issued. Appellees have advanced in their brief other propositions of waiver, ratification, and estoppel, which cannot be considered in aid of the judgment because not specially plead.

■ In our judgment, on the facts stated, the collection of the past-due and unearned premiums after the fire constituted a waiver of the breach alleged by appellants. "It is a well-recognized rule that forfeitures are not favored in law." Home Insurance Co. v. Puckett, supra. It is also the law that "the slightest evidence indicating waiver of forfeiture will support a jury finding to that effect." Nat. Standard Fire Insurance Co. v. Hubbard (Tex. Civ. App.) 31 S.W.(2d) 859, 860. So, the courts hold generally that an insurer is estopped to assert that a fire policy is avoided where, after the insured property has been destroyed by fire, with knowledge of the breach making the policy void, it demands and accepts payment of the past-due and unearned premiums. 14 R. C. L. 1197; Cooley's Briefs on Insurance (2d Ed.) vol. 5, p. 4325; Couch's Law of Insurance, vol. 3, § 690, p. 2289; German Alliance Insurance Co. v. Elevator Co. (Tex. Civ. App.) 257 S. W. 273. The opinion of the Court of Civil Appeals in the Puckett Case, reported 17 S.W.(2d) 849, sustains this proposition. The substantive law of that case was reaffirmed by the Commission of Appeals in its opinion, 27 S.W.(2d) 111, 113, but the judgment of the Court of Civil Appeals was reversed because the commission was of the opinion: "That, taking the entire testimony as shown from this record in its most favorable light, it is not shown that any agent, officer, or representative of the insurance company, with full knowledge of the facts pertaining to the loss sustained by plaintiff, waived any of the provisions of the policy."

632

■ It follows that the only open question in this case was the authority of R. E. Smith & Company to demand and receive from appellees, in the name of and as agents of appellants, the payment of the balance due on the premiums for which the policies were issued. We think, on the following facts, these agents had this power. Under their written certificates of authority they were given power not only to solicit this insurance, to fix the premium rates and execute and deliver the policies, all of which they did, but also "to receive moneys" for appellants from appellees in payment of the policy premiums. There was no limitation in the certificates of authority to the effect that R. E. Smith & Company could not "receive moneys" after a fire ·loss. As appellants did not impose this limitation upon their agents, the law will not do it for them by process of construction. Also, had appellees pleaded the issue, it could be said that appellants, by receiving the past-due premiums from their agents ·after the fire (shown by the fact that they made appellees a tender of this fund), and retaining it in their possession until the tender was made, with knowledge of the breach, ratified all their agents did in collecting it; but without this plea this testimony has strong probative force on the issue of actual power in the agents to collect the past due premiums.

The amount of the premiums was due, and under written authority R. E. Smith & Company collected this amount with full knowledge of the fire loss and of the institution of the foreclosure suit. This act by the agents constituted a waiver of the alleged ·breach. The opinion of the Commission of Appeals in the Puckett ·Case, supra, fully supports this conclusion. ·German-American Insurance Co. v. Waters, 10 Tex. Civ. App. 363, 30 S. W. 576, and American Cent. Insurance Co. v. Huston (Tex.· Civ. App.) 261 S. W. 158, cited by .appellants in support of their theory that R. E. Smith & Company have no power to bind them by anything done after the fire, are clearly' distinguishable on their facts from the facts of this case.

■ But to bind appellants it was not necessary that R. E. Smith & Company have a specific grant of authority to collect unearned premiums after a fire loss, but only that, in doing so, they act within the apparent scope of their authority and that appellees, in good faith, not knowing the extent of their authority, pay them the premiums. Ætna Insurance Co. v. Brannon (Tex. Civ. App.) 91 S. W. 614; Manhattan Life Insurance Co. v. Stubbs (Tex. Com. App.) 234 S. W. 1099; Niagara Insurance Co. v. Lee, 73 Tex. 641, 11 S. W. 1024; Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63. Having solicited, written, and· delivered these policies, and before the fire collected part of the premiums, and having general authority to collect all premiums, we think it necessarily

follows that if they did not have· actual authority, they had, at least, apparent authority to collect, after the fire, the balance due on these policies.

Appellants say that the act of their agents does not constitute a waiver of the breach because the record does not show that at the time they demanded and received of appellees payment for the past-due and unearned premiums they had knowledge of the fact that appellees knew of the institution of the foreclosure proceedings. There is no merit in this contention. The foreclosure proceedings had been pending about two months at the time of the fire, and the circumstances in evidence, as detailed above, were sufficient to put the agents upon inquiry as to notice to appellees of the foreclosure proceedings; nor is there any merit in the contention, advanced by appellants on oral argument, that the credit for the past-due premiums was extended by R. E. Smith & Company and not by them. This conclusion follows because appellees paid the money to its agents in good faith, believing they had the power to receive it. and, as above concluded, they had that power, either actual or apparent.

■ Even if appellants are right in saying that a local agent, as such, has no authority after a fire to waive a valid defense against the policy, this proposition would relate only to an express waiver, as such, and could not defeat the legal consequences of an act performed by an agent in the scope, actual or apparent, of his delegated powers. Having acted within the scope of his power, actual or apparent, his principal is bound by its legal consequences. There is no suggestion in the record that R. E. Smith & Company knew that the institution of the foreclosure proceedings breached the policy, and with this knowledge ·waived, or attempted to waive, the breach. There is no suggestion that they were attempting to assume any power not lawfully theirs. The whole record sustains ·the conclusion that these agents acted in perfect. good faith, believing they were protecting the interest of their principals in demanding and receiving payment of the past-due and unearned premiums.

■■ By the fourteenth question the trial court submitted to the jury the issue as to whether or not the fact that appellees knew of the institution of foreclosure proceedings before the fire "caused the fire or contributed to its cause." This question was excepted to by appellants on the theory that article 4930, Revised Statutes as amended by Acts 40th Leg. (1927), c. 33, § 1 (Vernon's Ann. Civ. St. art. 4930); known as the Anti-Technicality Law, had no application to the condition of the policy specially pleaded by them as a defense. That contention is sound and this question should not have been submitted. But since the judgment does not necessarily rest upon the jury's answer to this

question, it becomes immaterial and its erroneous submission does not constitute reversible error.

■ By their eighth, ninth, and tenth propositions appellants assert that (8) "the verdict of the jury fixing the actual cash value of the machinery and equipment before the fire at $7805.51 is excessive," (9) that the verdict is without support in the evidence "because there was no testimony as to the actual cash value therèof immediately before the fire," and (10) "the court erred in permitting testimony as to the value to plaintiffs of the machinery and equipment in question before the fire." Propositions 8 and 9 have no merit, provided the tenth proposition does not present error, because, if admissible against appellants' exceptions presented by the tenth proposition, the evidence clearly supports the jury's verdict. We believe the court did not err in permitting appellees to testify as to the value of the property to them. In Int. & G. N. Railway Co. v. Nicholson, 61 Tex. 550, speaking for the Supreme Court, Mr. Chief Justice Willie said: "As compensation for the actual loss is the fundamental principle upon which this measure of damages rests, it would seem that the value of such goods to their owner would furnish the proper rule upon which he should recover." In Houston & T. C. Railway Co. v. Lewis (Tex. Civ. App.) 185 S. W. 593, '594, the court said: "The fundamental and controlling principle is that the injured party shall have actual pecuniary compensation for the injury received, so that he may be placed as near as may be in the condition which he would have occupied but for the injury sought to be redressed."

■ In answering the foreclosure suit instituted against them by intervener Stedman Fruit Company, appellees pleaded, but the pleading was not sworn to, that certain machinery covered by these insurance policies was worthless. By their verdict in this case the jury found that this machinery was worth $3,000. On the issue of value appellants offered this pleading in evidence, but it was excluded on the exception of appellees that the plea was not sworn to. This testimony should have been admitted, but we do not think its exclusion constituted reversible error. It does not appear from the bill of exceptions that the appellees knew that this statement was in their answer, or that they knew that an answer had been filed in the case for them, and it does appear in the record that the suit was settled by agreement and that they recognized their obligations to Stedman Fruit Company for the full purchase price of this machinery.

■ In submitting the special issues the trial court so framed them as to submit the issues affirmatively, thus to give one of the issues: "Do you find from the preponderance of the evidence that the machinery and equipment in the hollow tile building was burned to such an extent that it was a total loss under the terms of the policy? Answer 'Yes' or 'no' as you find the facts to be." The objections to these issues is that "such submission indicates that in the opinion of the court the question should be answered in the affirmative." There is no merit in this contention. Ineeda Laundry v. Newton (Tex. Civ. App.) 33 S.W.(2d) 208. Appellants cite in support of their proposition our opinion in Stedman Fruit Co. v. Smith (Tex. Civ. App.) 28 S.W.(2d) 622. This case is not in point on the proposition.

■ Appellants assign error against the ruling of the court permitting appellees to ask George D. Hodgson, a witness for appellants, the two following questions:

"I will ask you if it isn't true that your attorneys told you that if Mr. Calhoun's statements were true that it amounted to a waiver of any right to forfeit this policy on the part of this company?"

"I will ask you if it isn't true that your attorneys told you that if Mr. Calhoun's statements were true that it amounted to a waiver of any right to forfeit this policy on the part of this company?"

The bills of exception do not show that the witness answered these questions, which relieves the assignment of error. Again, the exception was merely that the questions were "prejudicial." Such an exception was too general to constitute error.

From what has been said it follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.