SUPREME LODGE KNIGHTS OF HONOR v. ALLIE B. KEENER.

No. 426.

1. **Forfeiture by Nonpayment of Assessments.**—The constitution of the order providing that a member failing to pay any assessment required by law shall stand suspended, and shall not thereafter be entitled to the benefits of the widow and orphan benefit fund, until reinstated, is mandatory and self-executing, and if he has failed to pay such assessments from April 5 to July 7, and dies July 12, his widow can not recover upon his benefit certificate, although he had made application for reinstatement in his subordinate lodge and tendered all over-due assessments, dues, and fines. Knights of Honor v. Wickser, 72 Texas, 257, distinguished.

2. **Irregularities in Action of Subordinate Lodge.**—A subordinate lodge must vote on the question of suspension, and there must be a definite time fixed for the duration of the suspension, but failure in either particular is immaterial, and will not relieve a member from the consequences of his failure to pay his assessments, which in itself worked his suspension.

3. **Estoppel.**—The failure of the subordinate lodge to hold its monthly meetings in accordance with the laws and regulations of the order, whereby Keener was prevented from making an earlier application for reinstatement, does not estop the Supreme Lodge from denying the claim of his widow for the sum secured to her by his benefit certificate. A subordinate lodge can not by its acts or omissions render nugatory the express provisions of the supreme law of the order.

4. **Inadmissible Evidence.**—All evidence of what was done by the subordinate lodge of which Keener was a member, after his death, in reference to his suspension or application for reinstatement, was irrelevant and immaterial and should have been excluded.

5. **Hearsay Evidence.**—The point of inquiry being whether Keener had ever made any effort to get his lodge to meet at an earlier date than July 7, in order to act upon his application for reinstatement, evidence of what was said about it in the lodge after his death was hearsay and inadmissible.

6. **Proper Charge.**—The following charge should have been given: "The facts in this case show that L. J. Keener failed to pay the assessments required

of him on April 1, 1888, and that he failed to take steps to reinstate himself till July 7, 1888, and that he died before he became reinstated in Kilgore Lodge Knights of Honor, and you will return a verdict for defendant."

ERROR from Rusk. Tried below before R. B. LEVY, Esq., Special Judge.

*John R. Arnold* and *Frederick H. Bacon*, for plaintiff in error.—1. The charge was defective in the following respects: The undisputed evidence shows that Keener did not pay his assessments, and under the laws of defendant order the nonpayment of assessments ipso facto works suspension. The court should have so charged, because the contract so provides, and must govern.

(1) Under principle that nonpayment ipso facto suspends: Borgraefe v. Knights of Honor, 22 Mo. App., 114; Forse v. Supreme Lodge, 41 A. M., 206; Rood v. Passenger Association, 31 Fed. Rep., 62; Bosworth v. Western M. A. Soc., 75 Iowa, 582; Maginnis v. Cotton Exchange, 43 La. Ann., 1136; Gunther v. Association, 40 La. Ann., 777; Hogins v. Supreme Council, 76 Cal., 109; McDonald v. Ross-Lewin, 29 Hun, 87; Bacon on Ben. Soc., 285.

(2) Under principle that when undisputed evidence shows a certain state of facts, it is error not to so instruct the jury: Bernheim v. Shannon, 21 S. W. Rep., 388; Kirby v. Estell, 75 Texas, 487.

2. When a member has once become suspended, in order to become reinstated he must comply with all the conditions of reinstatement, including a vote of the lodge, because otherwise part of the contract is nullified. Wells v. Independent Order, 25 Can. Law Jour., N. S., 209; Lyon v. Supreme Assembly, 153 Mass., 83; McDonald v. Chosen Friends, 78 Cal., 49; Harvey v. Grand Lodge, 50 Mo. App., 72; Lehman v. B'nai Brith, 23 N. Y. Weekly Dig., 409.

Until reinstated by ballot the payment of assessments amounted to nothing. Const. and Laws K. of H. 1887–88, secs. 14, 15, p. 26; sec. 10, p. 18; sec. 3, p. 71; Sherrett v. Royal Clans, 37 Ill. App., 446; Garbutt v. Citizens, etc., 51 N. W. Rep., 148; Brown v. Grand Council, 46 N. W. Rep., 1086.

3. The court erred in permitting S. J. Hendrick, over objection of defendant, to state what he found and learned from an investigation about Keener's suspension, made May, 1889, after Keener's death. All that happened in the subordinate lodge after Keener's death could not bind defendant, because what was said after Keener's death by the members of Kilgore Lodge was hearsay, and not said by them in any representative capacity, and the lodge itself had no authority in any way, shape, or manner to bind appellant in regard to the payment of a loss. Bagley v. Grand Lodge, 131 Ill., 498; Harvey v. Grand Lodge, 50 Mo. App., 472; Railway v. Burke, 55 Texas, 339; Thompson v. Comstock, 59 Texas, 320;

Oliver v. Hester, 65 Texas, 192; 9 Am. and Eng. Encycl. of Law, 325, 326, note 1; Rosenthal v. Middlebrook, 63 Texas, 335.

*W. C. Buford* and *J. H. Turner*, for defendant in error.—1. It being the duty of Kilgore Lodge, of which Keener was a member, under laws enacted by appellant for its government, to collect and remit to appellant the widow and orphan benefit fund from its several members, it had the right to use such means as in its judgment the rules and regulations of the order authorized to accomplish this purpose; and if in doing so it acted wrongfully, either by way of doing things it ought not to have done, or omitting to do things it ought to have done, and its acts were within the apparent scope of its authority, appellant would be responsible for the same. Plaintiff in error can not avoid the contract in this case for the want of strict compliance with its conditions, when it is shown that by its own acts of commission and omission it rendered it impossible for said Keener to so comply, or when it has failed to comply with its conditions precedent on its own part. K. of H. v. Wickser, 72 Texas, 257.

2. After the suspension of L. J. Keener by Kilgore Lodge, on or about April 1, 1888, for nonpayment of assessments numbers 222 and 223, it was no longer liable to appellant for assessments on account of said Keener as a member of said lodge levied for April, May, and June, 1888, unless he had been duly reinstated, and it had no authority to collect said assessments until a meeting of said lodge was held; and so appellant can not avoid the policy in this case for a failure to pay said assessments.

3. Forfeitures in cases of this kind are not favored in law; and if the circumstances surrounding this transaction indicate an election on the part of Kilgore Lodge to waive a forfeiture, and it was not against the express letter of the laws of appellant, and Keener acted on them in good faith, believing that by conforming thereto his policy would not be forfeited, then appellant is estopped from denying its liability on this policy. Westbrook v. Guderain, 3 Texas Civ. App., 406.

PLEASANTS, Associate Justice.—This is an appeal from a judgment rendered in favor of appellee, the beneficiary of a benefit certificate issued to L. J. Keener, the husband of appellee, by the appellant, on the 25th day of November, 1881, stipulating for the payment of $2000 to his wife upon the death of said L. J. Keener, upon the condition, among others, that he comply with the laws and rules and regulations governing the order, or that might thereafter be enacted for its government, and that he is in good standing in his lodge at the time of his death.

The pleadings of both plaintiff and defendant were lengthy and numerous, including various exceptions by each party to the pleadings of the other. Defendant, besides general and special exceptions and general denial, pleaded in bar of the suit a *failure* of the said L. J. Keener

to perform the conditions upon which payment of the sum contracted for in the certificate was to be made to his wife; that by his failure to pay assessments due from him, the said Keener was not a member of the Supreme Lodge Knights of Honor, or of any of its subordinate lodges, at the time of his death, but was suspended from membership by reason of his failure and neglect to pay said assessments; and that by reason thereof the said certificate became null and void.

Upon trial of the cause, January 18, 1893, verdict and judgment were rendered for appellee for $2000, with interest thereon from February 1, 1890; and a motion for a new trial being overruled, the defendant appealed.

The appellant has made many assignments of error; but the disposition we make of the appeal relieves us from considering most of them. The plaintiff was the wife of L. J. Keener, who died on the 12th of July, 1888, and is entitled to recover unless the certificate was forfeited. The defendant is a corporation, chartered by the State of Missouri, and is a charitable fraternity, composed of a supreme lodge and subordinate lodges, and known as the "Knights of Honor." The supreme lodge alone is incorporated, and is the representative of the order. The funds from which the benefit certificates issued to members are paid is called the widows and orphans benefit fund, and is raised by monthly assessments upon every member of every subordinate lodge of the order or fraternity.

The evidence adduced upon the trial established the following facts: L. J. Keener became a member of the order in 1881, and paid his assessments and dues regularly, and otherwise demeaned himself as became a member of the fraternity, until April 1, 1888, and after that time he ceased to pay either his assessments made by the supreme lodge, or his dues to the subordinate lodge of which he was a member. On the 5th of April, 1888, the latter lodge declared him suspended from membership, by reason of his failure to pay certain assessments and dues; and from that date to the 7th of July following there was no meeting of said lodge. On the day last mentioned, Keener appeared before the lodge, then in regular session, and asked to be reinstated, offering to pay all assessments and dues and fines with which he was chargeable. The application does not seem to have been in writing. The lodge, by its proper officer, in response to his application for reinstatement, informed him that more than sixty days having expired since he was suspended, he must first present a certificate from the proper medical officers of the order touching the state of his health, before his application could be considered, and he was furnished with a blank certificate, and the lodge then adjourned.

On the 8th of the month the medical examiner made examination of Keener's condition, and found his health to be perfect, and gave him a certificate to that effect, which was under the rules and regulations of the order, forwarded for his approval to the medical examiner for the grand

lodge; but before the certificate was returned from the latter officer, Keener died from injuries received from a moving train of cars. He was wounded on the 11th and died on the 12th of July, 1888. On the 12th, before his death, he was visited by the reporter of his lodge, the officer whose duty it was to receive the assessments due from the members of the lodge, and was requested to pay the assessments which were then due from him, and under instructions from Keener, his wife, the plaintiff, then paid the amount demanded by the reporter, and this sum, after Keener's death, was returned to the plaintiff; and subsequently a memorial was sent by the local lodge from which Keener was suspended, to the supreme lodge, praying that the claim of the plaintiff be allowed and paid, which memorial was refused and the claim rejected.

It is not shown that Keener made any effort to procure a session of the lodge between April and July, 1888, except by testimony which was hearsay, and which was erroneously admitted by the court over objection of defendant. The laws of the order required that there should be monthly sessions of each subordinate lodge, and a member suspended could only be reinstated by a vote of the lodge, taken when in regular session. Between April and July, 1888, while there was no session of the lodge, the assessments upon its members were collected by the reporter and transmitted to the treasurer of the supreme lodge; and within that time Keener was spoken to by a member of the lodge, who advised him to resume his connection with the lodge, and in this conversation Keener admitted that he had neglected to pay his assessments. The evidence further shows that between April and July there was no change made by the supreme reporter, who was authorized to do so if he deemed it necessary, in the number of the assessments for each month upon each member of the subordinate lodge.

It is insisted by appellee, that Keener was not legally suspended by his lodge, in this, that there was no vote taken upon the question of his suspension, nor was he suspended for any definite length of time, and that therefore the suspension could not work a forfeiture of his benefit certificate. The laws of the order seem to require, that before a member can be suspended by a lodge, it must vote on the question of suspension, and if the question be decided in the affirmative, then there must be some definite time for the duration of the suspension; and if it be true, as contended by appellee, that there was no vote taken, and no time fixed for the duration of the suspension, doubtless such action by the lodge would not work a forfeiture of any right of the member.

But we are of the opinion that it is immaterial whether there was or was not a suspension effected by the lodge. Keener's failure to pay his assessments ipso facto worked his suspension.

Section 7 of article 7 of the constitution of the order provides as follows: "On or before the last day of each month each member shall pay

the amount of two assessments, unless the number of assessments due and to be paid during such month shall have been determined to be greater or less than two, in which event he shall pay the amount of assessments thus determined. A member failing to pay any assessment required by law shall stand suspended, and shall not thereafter be entitled to the benefits of the widows and orphans benefit fund, until he has been duly reinstated in his subordinate lodge, in accordance with the laws of the order.''

This case is unlike that of the Supreme Lodge Knights of Honor v. Wickser, 72 Texas, 257, which is cited by counsel of appellee, in this: in that case there was only one assessment, and the laws of the order required that notice should be given of the assessment to each member of the lodge; here there being two assessments, and no change having been made by the supreme reporter, no notice was required to be given to the members of the lodge.

Section 2 of article 7 of the constitution of the order is in these words: '' On the 20th day of each month the supreme reporter shall determine the number of assessments, if any, necessary to provide for the payment of deaths which may be registered during the ensuing month, and shall immediately mail notice thereof to each lodge. If the number of assessments so determined be greater or less than two in any month, each member shall be notified thereof at once by the reporter of his lodge, by a notice bearing date of the first of said ensuing month.''

As we have seen, the seventh section of this same article of the constitution declares, that any member failing to pay any assessment required by law shall stand suspended, and shall not be entitled to the benefits of the widows and orphans benefit fund, until he has been duly reinstated in his subordinate lodge, in accordance with the laws of the order. This section is self-executing, and requires no action on the part of a subordinate lodge, or of any other judicatory of the order, to put it in operation. The words of the constitution are mandatory; not that a member may be '' suspended '' for not paying his assessments, but he '' shall stand suspended.'' Borgraefe v. Knights of Honor, 22 Mo. App., 114; Reed v. Railway Conductors' Benevolent Assn., 31 Fed. Rep., 62; Bosworth et al. v. Western Mutual Aid Society, 75 Iowa, 582; Knights of Honor v. Johnson, 78 Ind., 110; Hogins v. Supreme Counsel of Champions of Red Cross, 76 Cal., 109.

Section 7 is equally imperative and mandatory, that a suspended member shall not be entitled to the benefits of the association until reinstated in accordance with the laws of the order. This provision is like the other provisions of the section, a part of the contract between the member and the supreme lodge of the order. Lyon v. Supreme Assembly, 153 Mass., 83.

It is insisted that the appellant is estopped from denying the claim of plaintiff by the acts and omissions of the subordinate lodge of which her husband was a member. To this proposition we can not give our assent.

The failure of the lodge to hold monthly meetings in accordance with the laws and regulations of the order did not relieve Keener from his contract with the Supreme Lodge to pay his monthly assessments; and being by his own negligence suspended from the order, he can not avoid the penalty of suspension by pleading the derelictions of his lodge. If this be permitted, then a subordinate lodge, by its unauthorized act or by its culpable omission of duty, may override and render nugatory the express provisions of the supreme law of the order. Moreover, there was, as we have seen, no effort made by Keener to have a meeting of the lodge before the one held on the 8th of July, 1888. Nor does the receipt by the reporter of the assessments due from Keener on the day of his death estop the appellant. Section 15 of article 7 of the constitution declares, "that the reporters of the subordinate lodges, in collecting and forwarding assessment to the supreme treasurer, shall be the agents for the members of their lodges, and shall not be agents for the supreme lodge."

Section 3 of article 7 of the constitution is in these words: "A member of this order suspended for nonpayment of dues, fines, or assessments, desiring to be reinstated, must, within one year after his suspension, make application in writing, either by himself or agent, to the lodge, at a stated meeting thereof; which application shall be acted on at such meeting of the lodge, when the applicant may be reinstated upon the following conditions only: If less than sixty days have elapsed since the date of his suspension, his application for reinstatement shall be accompanied with the amount he is in arrears for dues, fines, and all assessments made during suspension, including the assessment or assessments on which he is suspended; but he shall not be required to furnish a certificate of good health, unless ordered by his lodge. If more than sixty days and less than one year have elapsed since the suspension, his application for reinstatement shall be accompanied with the amount of dues and fines in arrears at the time of suspension, the assessment or assessments on which he was suspended, the first assessment or assessments due from his lodge after the reinstatement, and, if a beneficiary member, a certificate of good health in the form prescribed by the supreme lodge from a lodge examiner, approved by the State medical examiner of the jurisdiction in which his lodge is situated. A ballot shall be ordered in all cases, and if a majority of the ballots cast are favorable, the applicant shall be reinstated; but if either the medical examination or the ballot be unfavorable, the applicant shall be suspended, and can only become a member under the rules governing a new applicant. All applications for reinstatement must be forwarded to the supreme reporter immediately after the reinstatement of the member."

From this section, we see that a suspended member can only be reinstated by his making application to the lodge at a stated meeting for re-

instatement, and by obtaining a majority of the ballots in favor of his application, cast at the meeting at which the application is made, and by a compliance on his part with the conditions upon which the lodge is authorized by the law to grant his application.   We think that the objections made by the defendant to all evidence of what was done by the lodge of which the plaintiff's husband was a member, after his death, and the objections to evidence of what was said or done by any member of the lodge after her husband's death, in reference to his suspension or to his application for reinstatement, should have been sustained by the court, and the evidence excluded as irrelevant and immaterial.

And we are further of the opinion, that the court erred in overruling defendant's objection to the following question propounded to the witness S. J. Hendrick, after witness had stated that he was present at the meeting of the Kilgore Lodge, held eight or ten months after the death of Keener:   "State whether anything was said publicly in said lodge tending to show whether or not Keener had made any effort to get the lodge to meet earlier than the 7th of July, 1888?"  And to this question the witness answered, "that such was said."   The evidence was clearly hearsay, and should have been excluded.

Several errors are assigned in giving and refusing charges by the court. We shall notice but one of these assignments.   Number 10 of the charges asked by defendant and refused by the court is in these words:   "The facts in this case show that L. J. Keener failed to pay the assessments required of him on April 1, A. D. 1888, and that he failed to take steps to reinstate himself till July 7, A. D. 1888, and that he died before he became reinstated in Kilgore Lodge Knights of Honor, and you will return a verdict for defendant."   This charge should have been given.

The laws of the order, which we have cited, were intended to compel the members to comply with their obligations to pay their monthly assessments, and these laws form a part of the contract which each member makes with his brother members when he enters the order; and public policy seems to require that these laws must be upheld and enforced by the courts, otherwise the benevolent purposes of the organization, to afford assistance when needed to each member of the brotherhood during his life and to provide a fund for the benefit of his widow and orphan after his death, can not be effected.   Without meaning to decide that under no circumstances can a recovery be had upon a certificate like the one sued on in this case, where the member made default in the payment of his assessments, we do decide, that under the facts as they are presented in the record before us, the plaintiff has no claim upon the widow and orphan fund of the society, and that she should not recover.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 1, 1894.